UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JOHN M. JACOBS,**

    **Plaintiff,**

  v.                                                          Case No. 20-CV-409-SCD

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

    John M. Jacobs seeks judicial review of the final decision of the Appeals Council of the Social Security Administration denying his claim for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). On July 17, 2019, an administrative law judge (ALJ) denied Jacobs' claim at step five, concluding that Jacobs "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 24. Jacobs subsequently sought judicial review. For the reasons set forth below, the Commissioner's decision will be affirmed.

## BACKGROUND

    On June 30, 2015, Jacobs first applied for disability insurance benefits and supplemental security income, alleging an onset date of May 1, 2014. R. 95. His application was denied initially and upon reconsideration. Jacobs filed a written request for a hearing before an ALJ. R. 95. After holding the hearing and reviewing evidence, the ALJ determined that Jacobs was not disabled. R. 104.

Jacobs later filed a second application on August 14, 2017. The claim was again denied initially and upon reconsideration. Jacobs filed a written request for a hearing before an ALJ. R. 13. At the hearing, Jacobs attempted to reopen his prior proceedings, but the ALJ determined that there was no good cause to do so and denied his request. *Id*. After receiving testimony both from Jacobs and a vocational expert (VE) and reviewing the medical record, the ALJ concluded that Jacobs suffered from the severe impairments of clinical obesity—he weighed close to 500 pounds—left knee disorder, degenerative joint disease of the right shoulder, status post right shoulder surgery, chronic obstructive pulmonary disease (COPD), and obstructive sleep apnea. *See* R. 16. The ALJ concluded that none of Jacobs' severe impairments medically met or equaled a listing. R. 17.

After determining his severe impairments, the ALJ assessed his residual functional capacity (RFC), concluding that Jacobs has the RFC "to perform sedentary work . . . except: he can never climb ladders, ropes, or scaffolds," although Jacobs may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and push or pull with the left lower extremity. R. 17. In addition, the ALJ limited Jacobs' RFC to avoid extreme heat, unprotected heights, operating a motor vehicle, and dangerous machinery, although Jacobs "can tolerate occasional exposure to humidity, vibration, dust, odors, fumes, and other pulmonary irritants." *Id.*

After determining his RFC, the ALJ then assessed whether Jacobs is capable of performing any of his previous work, concluding that he cannot do so. R. 22-23. However, based upon testimony from the vocational expert (VE), the ALJ concluded that Jacobs remains capable of performing as a document preparer (25,000 jobs in the national economy), inspector (20,000 jobs), and sorter (15,000 jobs). As a result, the ALJ ruled that Jacobs is not

disabled because he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 24. Jacobs now appeals that determination.

ANALYSIS

I. **Applicable Legal Standards**

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported [his] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); and *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered

by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); and *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

In his brief, Jacobs appears to advance three arguments. First, he argues that the ALJ improperly ignored an opinion of his treating physician. Second, he argues that the ALJ failed adequately to consider his subjective symptom of needing to elevate his legs. Third, Jacobs argues that the ALJ failed properly to consider the aggravating effect his obesity has upon his impairments.

## II. Medical Source Opinion

Jacobs argues that the ALJ erroneously failed to consider an opinion from Jacobs' medical source, Dr. Claudia Koch. Jacobs claims that "Dr. Koch provided a functional capacity assessment in April 2017 stating that Plaintiff . . . could sit [only] with both feet elevated." ECF No. 18 at 11. However, the administrative record is devoid of any such functional assessment, which Jacobs now concedes was due to inadvertent omission or error. Nonetheless, he argues that the ALJ should have considered Dr. Koch's functional assessment because the assessment was provided in a previous disability claim.

Although the ALJ plays a role in developing the record, so does the claimant. The regulations clarify that although the agency "take[s] a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability . . . claims." SSR 17-4p. Here, the ALJ asked counsel at the hearing if the medical record was complete, and counsel stated that it was. R. 33-34. The ALJ was entitled to rely on that assertion and therefore did not err by failing to consider evidence that was not part of the record before him.

4

In sum, "[t]here is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ'" and here Jacobs has failed to point to any doctor's opinion contained in the record that requires him to keep his legs elevated. *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

Finally, it is clear that the ALJ *did* consider the opinion, at least in substance. The ALJ remarked that "Per Dr. Koch's recommendation, he elevates his legs past waist level using a recliner. He finds this helpful." R. 18. Thus, even if the ALJ did not specifically have Dr. Koch's 2017 opinion in the record, the ALJ knew that at one point (prior to the onset date) Dr. Koch had at least recommended elevating the legs as a means of pain mitigation. Accordingly, because the ALJ was aware of the essence of Dr. Koch's 2017 recommendation, the outcome here does not turn on whether the ALJ considered a specific treatment note or opinion. Instead, the question is whether the ALJ properly addressed all of the evidence surrounding Jacobs' stated need to elevate his legs while sitting.

### III. Jacobs' Need to Elevate Legs

Under Social Security regulations, when evaluating a claimant's subjective symptoms, the ALJ must follow a two-step process. *See* 20 C.F.R. § 404.1529; *see also* SRR 16-03p. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-03p. Second, assuming that the ALJ finds in the affirmative at step one, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id*. In determining the intensity and persistence of the

claimant's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*; *see also* 20 C.F.R. § 404.1529.

Here, the ALJ concluded that Jacobs' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Jacobs'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 20. The ALJ based this conclusion on objective medical evidence and medical observations. Specifically, the ALJ based his conclusion on the findings, observations and opinions of Dr. Koch, see R. 20 (citing Exhibits B4F, B9F, B10F); those of Dr. Fareed, see R. 20 (citing Exhibit B6F); and those of state agency medical consultants Dr. Mina Khorshidi and Dr. Sai Nimmaggadda, see R. 21 (citing Exhibits B2A and B7A).

Nonetheless, Jacobs contends that the ALJ failed to adequately consider his need to keep his legs elevated to manage his knee pain. Jacobs testified that "having [his] legs elevated . . . . helps with [his] knee pain." R. 40. Jacobs then confirmed that he began doing so on his doctor's "recommend[ation]." *Id.* Beyond his testimony, Jacobs noted in his functional report that he "ha[s] to have feet and legs elevated," although the functional report failed to elaborate upon the statement. R. 309. Jacobs argues that the ALJ "provides no explanation as to why or the extent to which the Plaintiff's testimony about leg elevation . . . was not credible." ECF No. 18 at 12.

6

To the contrary, the ALJ explicitly considered his testimony, noting in the decision that Jacobs asserted that he "must elevate his legs for several hours per day." R. 20. After acknowledging Jacobs' testimony, the ALJ concluded that a leg-raising requirement was not consistent with the objective medical evidence because "Dr. Koch's treatment notes are absent for such a limitation." *Id.* The ALJ cited the treatment notes provided by Dr. Koch from January to December 2018 (R. 478-509), which are indeed lacking any discussion of a need for Jacobs to raise his legs. For example, the notes indicate that his treatment plan to manage leg pain involved weight loss and pain medication, which he tolerated well, as well as exercise within limitation. *See* R. 486. Despite several office visits during that time period, there is no discussion of leg elevation being required or even recommended as part of any pain management plan. Notably, these treatment notes were more current than Koch's April 2017 opinion. The ALJ also cited the absence of any leg-raising directive in exhibit B4F (R. 415-450), which the ALJ might have thought were Dr. Koch's treatment notes but were in actuality notes from APNP Claude Latalle, who works in the same clinic. In any event, the ALJ was correct that these notes are also notable for the absence of any suggestion that Jacobs should elevate his legs. Indeed, APNP Latelle's plan to manage Jacobs' knee pain included treatment with Norco, a pain reliever, and "weight loss," but failed to include any recommendation regarding the need to elevate Jacobs' legs. *See* R. 419. By citing the absence of any need to raise his legs in Jacobs' medical records, the ALJ provided a logical reason for discounting that asserted limitation.

But that's not all. Elsewhere in his opinion the ALJ cited the opinion of Todd Swenson, M.D., an orthopedic specialist who saw Jacobs on several occasions. *See* R. 22. The ALJ specifically cited a record from Dr. Swenson indicating that Swenson completed a form

7
Case 2:20-cv-00409-SCD   Filed 03/26/21   Page 7 of 12   Document 28

for the State of Wisconsin exempting Jacobs from work. R. 398. The ALJ noted, however, that Dr. Swenson's statements "appear to reflect a belief that the claimant is able to perform other types of work." R. 22. The ALJ was correct: Dr. Swenson's record indicates that "I did attest that he does have a medical condition that prohibits him from doing labor or prolonged weightbearing activities. This is not to infer that his medical condition precludes him from working whatsoever but precludes him from working the type of jobs that he has performed in the past." R. 398. Clearly, Dr. Swenson's qualified opinion was careful to suggest that Jacobs was *not* precluded from working whatsoever. Moreover, that same treatment note also indicates that Jacobs "does not have a lot of discomfort at rest." *Id.* This once again supports the ALJ's discounting of Jacobs' claim that he must elevate his legs while sitting.

In addition, the ALJ gave significant weight to the opinions of the state agency reviewing physicians. R. 21. Dr. Khorshidi's opinion notes that Jacobs' "knee, ankle, shoulder, and low back pain was noted to be stable" and that, despite "significant standing/walking limitations due to pain and obesity, [he] is capable of sedentary work." R. 114. On reconsideration, Dr. Nimmagadda believed "the assessment and RFC in file to be an accurate representation of the [claimant's] physical limitations." R. 158. Moreover, the "alleged intensity of the symptoms and their alleged impact on functioning are greater than the objective findings would suggest." *Id.* In the face of this medical opinion evidence, and the absence of any discussion of elevated legs in the contemporaneous treatment notes of his primary care providers, the ALJ was entitled to conclude that "the intensity, persistence and limiting effects of [Jacobs' subjective] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 20.

8
Case 2:20-cv-00409-SCD   Filed 03/26/21   Page 8 of 12   Document 28

The legal authorities to which Jacobs cite do not undermine the ALJ's analysis. First, Jacobs relies on *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 1998), *Britt v. Berryhill*, 889 F.3d 422 (7th Cir. 2018), and *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010), to argue that the ALJ must confront all evidence and then explain why a purported symptom or limitation is not credible. However, as stated above, the ALJ did so, both recognizing Jacobs' testimony and contrasting it with Dr. Koch's treatment notes, where such a limitation was conspicuously absent. Second, relying on *Parker v. Astrue*, 597 F.3d 920, 921-922 (7th Cir. 2010), among other authorities, Jacobs takes issue with the boilerplate language the ALJ used. However, while the Seventh Circuit has criticized the use of similar boilerplate language, "the phrase 'not entirely credible' (or 'not entirely consistent') is meaningless only when the ALJ gives no legitimate reasons for discrediting the claimant's testimony." *Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020). Here, the ALJ provided ample reasons supporting his decision, specifically the ALJ's contrast of Jacobs' testimony against the lack of objective medical evidence corroborating it.

Third, Jacobs relies on *Deseray B. v. Saul*, No. 118CV01019DLPRLY, 2019 WL 2635893, (S.D. Ind. June 26, 2019), to argue that his testimony regarding the need to elevate his legs demanded more of the ALJ's attention. However, this authority in fact supports the opposite conclusion. In *Deseray*, the court took issue with the ALJ's failure to determine the credibility of the claimant's testimony that he must keep his leg elevated, noting that the ALJ failed even to state that the claimant's "subjective complaints are not supported . . . because there is a lack of corroborating medical evidence." *Id.* at *7. Here, however, the ALJ explicitly contrasted Jacobs' testimony with the absence of any corroborating medical evidence. R. 20.

Therefore, I find that the ALJ built a logical bridge between the evidence and his determination to give little weight to Jacobs' testimony that he must elevate his legs.

**IV.     Obesity-Related Limitations**

Finally, Jacobs argues that the ALJ failed to properly take into account the significant manner in which Jacobs' obesity impacted his impairments. As stated above, the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion[s]." *Clifford*, 227 F.3d at 872. Indeed, "while obesity is no longer a standalone disabling impairment, the ALJ must still consider its impact when evaluating the severity of other impairments . . . . [because] the combined effect(s) of obesity with other impairments may be worse than those same impairments without the addition of obesity." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) (citing *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016), and *Martinez*, 630 F.3d at 698). However, contrary to Jacobs' suggestion, the ALJ did consider his obesity and the deleterious impact his obesity would have on his other impairments, "recogniz[ing] that obesity is expected to have an adverse impact on his co-existing impairments, and past and present medical providers have noted that obesity largely factors in to his complaints of knee pain." R. 18-19 (citing Exhibits B2F, B4F, and B9F). In fact, in determining Jacobs' RFC, the ALJ allowed for the use of a cane to further accommodate Jacob's "clinical obesity and subjective knee complaints." R. 20.

Nonetheless, Jacobs takes issue with the ALJ's failure to adequately consider his limited ability to sit in a straight-back chair, which Jacobs argues is aggravated by his obesity. However, his own testimony did not suggest a problem with sitting in a straight-back chair; when asked to imagine performing a job where he could sit and stand at his option, he stated that "constant getting up and sitting down" is what would make his knee pain worse, not any

10

Case 2:20-cv-00409-SCD   Filed 03/26/21   Page 10 of 12   Document 28

particular kind of chair. R. 50. Moreover, Jacobs admitted that he could sit for up to three hours at a time without taking a break and stated that he could ride a motorized cart throughout a grocery store and drive a vehicle. *See* R. 312, 319, 45. Dr. Swenson, as noted earlier, found that Jacobs "does not have a lot of discomfort at rest." R. 398. Jacobs cites to no other evidence demonstrating the aggravating affect his obesity has upon his ability to sit. "Conditions must not be confused with disabilities," and as a result Jacobs must demonstrate the causal effect his obesity has on either producing or aggravating his impairments, a threshold he has not met here. *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). "[W]hen there are no limitations or restrictions in the record, the ALJ 'must consider the individual to have no limitation or restriction with respect to that functional capacity.' *Marvin v. Colvin*, No. 14-CV-313-JDP, 2015 WL 3495395, at *2 (W.D. Wis. June 3, 2015) (quoting SSR 96-8p).

To the extent that the ALJ was required to consider the effect of Jacobs' obesity more searchingly, any such error was harmless because the ALJ relied upon objective medical findings from providers who themselves analyzed Jacobs' obesity. As such, the ALJ implicitly incorporated the medical providers' consideration of the impact Jacobs' obesity would have on his other impairments. *See Prochaska*, 454 F.3d at 736–37 (affirming the ALJ's decision because, with respect to the claimant's obesity, the ALJ "predicated his decision upon the opinions of physicians who did discuss [the claimant's] weight" and the claimant "fails to point to any other evidence suggesting that her obesity exacerbated her physical impairments"). As in *Prochaska*, the ALJ based his decision upon the opinions of medical providers, Dr. Koch and the state physicians, who were aware of Jacobs' obesity.

## CONCLUSION

In sum, both state agency physicians reviewed the medical record and concluded that Jacobs was capable of sedentary work. Dr. Swenson also strongly appeared to believe that Jacobs was capable of a range of work. R. 398. The ALJ, after hearing Jacobs' subjective complaints about knee pain at the hearing, limited the plaintiff to a reduced range of sedentary work. R. 22. Given the absence of other evidence, the ALJ was entitled to give less than full credence to the suggestion that Jacobs needed to elevate his legs while sitting, a limitation that would have precluded any kind of work. Therefore, I find that substantial evidence supports the ALJ's determination of Jacobs' RFC.

For all the foregoing reasons, the Commissioner's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this 26th day of March, 2021.

_____
STEPHEN C. DRIES
United States Magistrate Judge